## A01A1066. POWELL v. THE STATE.
### (548 SE2d 447)

ELDRIDGE, Judge.

A Douglas County jury found Jimmy Louis Powell guilty of aggravated assault with a handgun, kidnapping, battery, and second degree criminal damage to an automobile. These charges arose in relation to acts Powell committed in a jealous rage directed at Vincent Simpson and at Powell's girlfriend/mother of his child, Betty Parker, after he discovered Simpson sleeping in Parker's bed. On appeal, he claims that (1) similar transaction evidence was improperly admitted, and (2) the evidence was insufficient to prove the offenses of aggravated assault and kidnapping beyond a reasonable doubt. We have reviewed these claims of error, and, finding them meritless, we affirm.

1. We find no error in the admission of the April 1995 similar transaction wherein Powell, who was driving his Jeep Cherokee on Highway 27 near Carrollton, observed another girlfriend/mother of his child, S. G., in a car with a male co-worker. The co-worker was giving S. G. a ride to her automobile, which was parked at a Waffle House. S. G. saw Powell's Jeep and "started looking scared." The co-worker "asked her what was wrong, and she said that, 'nothing, it's just my son's hus — I mean, my son's father.' And she said, 'just let me out and you go on.' So I let her out. We were at a Waffle House. I let her out, and when I did this Jeep started out behind me." Powell, in a jealous rage, followed the co-worker's car; began shooting at the co-worker's vehicle with a handgun; blocked the co-worker's vehicle in a cul-de-sac; rammed the vehicle with his Jeep; exited his own vehicle; and then ran toward the co-worker, striking him in the head with the handgun. Residents on the cul-de-sac observed the incident and called the police; Powell left before the police could arrive.

The similar transaction evidence and the case-in-chief show that Powell is jealous, physically abusive, and obsessively controlling in

his relationships with his girlfriends/mothers of his children.[1] While Powell now argues on appeal that the similar transaction incident was the product of "road rage," not jealousy, that is not what was shown at trial. At trial, defense counsel made a point of establishing that Powell was correct in suspecting a "relationship" between S. G. and her co-worker and that Powell was motivated by having "caught" the two together.[2]

Here, both the similar transaction incident and the case-in-chief "tend[ ] to show appellant's temper and his propensity to settle disagreements with a gun, and particularly to act violently and impulsively to disappointment, jealousy or misunderstanding and to resort to the . . . use of firearms with little or no provocation."[3] Accordingly, the trial court properly admitted evidence of the similar transaction in order to demonstrate Powell's course of conduct and bent of mind.[4]

2. Next, Powell challenges the sufficiency of the evidence as to his convictions for (a) aggravated assault and (b) kidnapping. On appeal the evidence must be viewed in the light most favorable to the verdict, Powell no longer enjoys the presumption of innocence, and this court determines the sufficiency of the evidence and neither weighs the evidence nor judges the credibility of the witnesses. Conflicts in the evidence are resolved by the jury.[5]

(a) Powell challenges his conviction for aggravated assault on Simpson, claiming Powell's own testimony showed that Simpson had a gun and that Powell acted in self-defense. Such may well have been established by Powell's testimony. But the State's evidence established the elements of an aggravated assault against Simpson, including evidence that Powell intentionally shot Simpson with a handgun he obtained in a jealous rage over Simpson's presence in Parker's bed. The jury, by its verdict, accepted the State's evidence. This Court will not go behind a jury's verdict simply upon a reassertion of a defendant's version of events. The jury is the sole arbiter of what evidence to believe and what to reject.[6] As the State presented some evidence to support each necessary element of the aggravated assault on Simpson, we uphold the jury's verdict.[7]

(b) Powell also challenges his conviction for kidnapping Parker. The State's evidence established that while begging, "please,

---

[1] See *Thomas v. State*, 246 Ga. App. 448, 449 (540 SE2d 662) (2000).

[2] At trial, Powell admitted to "fighting" with the co-worker over S. G., but denied using a handgun.

[3] *Willis v. State*, 214 Ga. App. 479, 480 (3) (a) (448 SE2d 223) (1994).

[4] *Davis v. State*, 244 Ga. App. 708, 711 (3) (536 SE2d 596) (2000); *Jordan v. State*, 192 Ga. App. 69, 70 (2) (383 SE2d 631) (1989).

[5] *Kapua v. State*, 228 Ga. App. 193, 195 (1) (491 SE2d 387) (1997).

[6] *Drake v. State*, 238 Ga. App. 584, 586 (1) (519 SE2d 692) (1999).

[7] *Jackson v. State*, 236 Ga. App. 260-261 (511 SE2d 615) (1999).

stop, don't," Parker followed Powell outside the residence as he obtained a handgun from his car. Parker "didn't want him [Powell] to come back in the inside of the house." Parker testified that Powell then "caught me and swirled me around." Powell grabbed Parker around the neck; with his forearm "pressing against [her] throat," Powell took her back into the house and "pulled" her into a bedroom. Parker testified that while in the bedroom, Powell "sort of popped me" with the handgun, causing her left eye to bleed and the left side of her face to swell. Powell then pulled Parker into a hallway and ordered her to call out for Simpson, "[a]nd he told me if he [Simpson] don't get down that hall he was going to kill me — kill this b-i-t-c-h." Thereafter, Powell shot Simpson. Then, with his forearm still around Parker's neck, Powell took her back outside again and broke the windows in Simpson's vehicle. The entire time, Parker was telling Powell "to stop. Stop it. You know, stop." Parker described herself as "very hysterical." Later, Parker gave the police a video statement that was played to the jury wherein she recounted being "drug around" the house by Powell. The State also introduced pictures of the injuries Parker suffered from the "pop" Powell inflicted upon her, which injuries demonstrate significant bleeding and swelling on the left side of Parker's face.

However, on cross-examination, Parker — who has a 40-year relationship with Powell and is the mother of Powell's 28-year-old daughter — also testified that she was never afraid of Powell and went with him willingly at all times on the night of the incident. She testified that she was not trying to get away from Powell; that she could have moved away at any point; and that she stayed with him willingly in order to "reassure Mr. Powell that [she] cared for him a great deal and that he was important in [her] life." Because of this testimony, Powell now argues that the evidence failed to establish that his holding of Parker was "against her will," which fact the State must prove as an essential element of kidnapping.[8] He claims that "against the will" is a state of mind and only Parker can know her own state of mind. So, he contends, the jury is bound by Parker's testimony regarding her own state of mind. We do not agree.

This issue illustrates the classic role of the jury in the resolution of conflicting evidence. Clearly, Parker's description of being "pulled" and "drug" through the house with Powell's forearm around her neck, the injuries she suffered at Powell's hands, her hysteria, Powell's threats against her life, and her pleas of "stop" are in conflict with her other testimony that Powell did not hold her against her will. Contrary to Powell's assertion on appeal, the jury is not bound by

---

[8] OCGA § 16-5-40 (a).

Parker's testimony regarding her state of mind. Instead, the jury, in arriving at a conclusion upon disputed issues of fact, may believe a part of the testimony of a witness and reject another part; it is the duty of the jury to ascertain the truth of the case from the opinion they entertain in consideration of *all* the evidence submitted at trial.[9] When viewed in a light most favorable to the verdict, ample evidence was presented to enable a rational trier of fact to find that Powell held Parker "against her will" and thus was guilty of kidnapping beyond a reasonable doubt.[10]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED APRIL 24, 2001.

*Monica T. Myles, Virginia W. Tinkler*, for appellant.
*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.

---

[9] *Hicks v. State*, 221 Ga. App. 735, 736 (472 SE2d 474) (1996).

[10] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).