## A01A1051. LEGGON v. THE STATE.
(549 SE2d 137)

ELDRIDGE, Judge.

An Appling County jury found 18-year-old Kenneth Leggon guilty of voluntary manslaughter, which charge arose from the shooting death of 15-year-old Kato Jemison outside the city gym in Baxley. He appeals, raising ten enumerations of error. We have reviewed Leggon's ten errors as enumerated, and finding them meritless, we affirm his conviction.

Viewed in a light most favorable to the verdict,[1] the evidence established that Leggon was causing trouble in the city gym by trying to start a fight with the victim's friend, Jake Coley. Troy Williams, an adult who had been playing basketball in the gym, believed that Leggon was carrying a gun; as a consequence, he gathered up several young men with whom he had been playing — including the victim and Coley — and attempted to leave the building, because, "I didn't know what was fixing to happen. I just was fixing to get out. I was going to get the people that came with me out of there."

However, Leggon had already exited the gym and was sitting on a handrail affixed to the outside steps; "he sat up on that rail right there facing the door and everybody had to come by him to get out

---

[2] The jury was instructed on circumstantial evidence.

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

the door." As Williams exited with his charges, Leggon approached the victim. He pulled out a handgun and pointed it at the victim's neck. The victim dropped a pen or pencil he had been carrying and bent to pick it up. As he was rising, Leggon again pointed the handgun at the victim's neck, and as Williams testified at trial, Leggon stated, " 'You think you're a bad SOB.' Pow. That was it." The 15-year-old victim died from a gunshot wound to his neck.

Leggon did not testify at trial but put forward several defense witnesses who testified that the victim had been threatening to "get" Leggon earlier in the evening and purportedly was carrying a .45 caliber pistol. In his statement to the police which was put before the jury, Leggon claimed that the victim had a knife and tried to "cut" him and that he shot the victim in self-defense: "If [the victim] wouldn't step to me trying to cut me, things will not had started in the first place." A knife was not found at the crime scene, although a pen and a pencil were recovered near the victim's body. *Held*:

1. Leggon challenges the sufficiency of the evidence introduced against him. An appellate court does not weigh the evidence but only determines if the evidence is sufficient under the standard of *Jackson v. Virginia*. In that regard, the presence of competent evidence to support each element of the offense as charged and for which a defendant was convicted requires the upholding of the jury's verdict.[2] Conflicts in the evidence are a matter of credibility for the jury to resolve and play no part in this Court's analysis.

Here, Leggon was indicted for malice murder. The trial court also charged on the lesser included offense of voluntary manslaughter, OCGA § 16-5-2. After hearing the evidence, the jury rejected Leggon's claims of self-defense, which is their right. They found, instead, that Leggon murdered the victim, but that such murder occurred "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person,"[3] i.e., the murder was provoked by the victim's threats against Leggon. Such determination is also their right. As there is ample evidence to support each element of the offense of murder and some evidence to support a finding of provocation, the evidence is sufficient to support the jury's voluntary manslaughter verdict.

2. In four separate enumerations, Leggon claims error in the trial court's refusal to give defense request to charge nos. 3, 5, 8, 9,

---

[2] *Espinoza v. State*, 244 Ga. App. 96, 99 (5) (534 SE2d 824) (2000).

[3] OCGA § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.").

10, and 17. While the State contends that Leggon's failure to reserve objections to the charge waives these claims of error, we are not unmindful of the Supreme Court of Georgia's recent remand with direction in *Bailey v. State*:[4]

> Because this Court has held that defendants in a criminal case are not required to except to the jury charge to preserve error for appeal and that the right to raise an erroneous charge on appeal may be lost only in certain well-defined instances, *Lumpkin v. State*;[5] see also *Tolver v. State*,[6] this Court grants this application for certiorari, and remands the case to the Court of Appeals for that Court to consider this case in light of the foregoing holdings.

Accordingly, we will carefully review the State's claim that waiver dictates the outcome of the instant enumerations of error.

At the conclusion of the trial court's charge to the jury, the following colloquy occurred:

> [Trial Court:] Mr. Johnson [prosecutor], Mr. Morris [defense attorney], exceptions to the charge. From the State, Mr. Johnson?
> [Prosecutor:] None from the State, Your Honor.
> [Trial Court:] From the defense?
> [Defense Attorney:] I'm not going to state any at this time. I don't think I have an obligation to state any exceptions at this point so I won't state any.

A defendant in a criminal case is not required to except to a jury charge in order to preserve error for appeal. OCGA § 5-5-24. However, the right to raise alleged errors in a charge may be lost in certain instances:

> Through an evolutionary process, the [Supreme Court of Georgia] has interpreted the code section and found certain instances in which the relief granted to the defendant may be waived by the defendant and certain other instances where the defendant may lose his right to relief by inducing the court to make an erroneous charge.[7]

Examples of these instances were articulated by the Supreme Court

---

[4] 2000 Ga. LEXIS 342, Case No. S00C0610 (May 1, 2000).
[5] 249 Ga. 834, 835 (295 SE2d 86) (1982).
[6] 269 Ga. 530 (5) (500 SE2d 563) (1998).
[7] *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980).

in *Lumpkin v. State*[8] and include where a defendant's tactical trial plan justifies a finding of procedural default; where error in the charge is induced by the actions of defense counsel; or where defense counsel in response to an inquiry by the trial judge plainly states that he has no objections to the charge as given.

Another instance in which waiver may be found is when the trial court *specifically asks* for objections to the charge: "In order to avoid waiver, if the trial court inquires if there are objections to the charge, counsel must state his objections or follow the procedure set forth in *Gaither v. State*[9] and approved in *White* [*v. State*][10] of reserving the right to object on motion for new trial or on appeal."[11] The above-referenced procedural rule was articulated more succinctly by the Supreme Court in *Rivers v. State*,[12] decided two months after *Lumpkin*: "Where objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge."[13] Such waiver rule was reiterated in *Tolver v. State*,[14] wherein Justice Fletcher wrote for the majority:

> Tolver contends that the charge given regarding parties to a crime was confusing and not adjusted to the facts of this case. The state contends that Tolver has waived his right to object because he failed to object at the time of the charge or to reserve objections. The record reveals, however, that *the trial court did not inquire as to whether counsel had objections*. Therefore, Tolver cannot be deemed to have waived the right to raise his objection on appeal.[15]

In fact, objection or reservation upon inquiry puts the trial court on notice of possible error and provides impetus for clarification and/or correction of such. As noted by Justice Weltner in his dissent in *Lumpkin*: "The function of the judge is adequately and correctly to instruct the jurors. The function of counsel is to represent their client's interest in seeing the judge perform that function."[16] While Justice Weltner urged specific objection in order to preserve alleged error in a charge, he also recognized that the law provides for "the

---

[8] Supra.
[9] 234 Ga. 465 (216 SE2d 324) (1975).
[10] 243 Ga. 250 (253 SE2d 694) (1979).
[11] *Jackson v. State*, supra at 460.
[12] 250 Ga. 303, 309 (7) (298 SE2d 1) (1982).
[13] Id.
[14] Supra.
[15] (Emphasis supplied.) Id. at 533 (5).
[16] *Lumpkin v. State*, supra at 839 (Weltner, J., dissenting).

reservation procedure set forth in *Gaither v. State*[, supra,] and approved in *White v. State*."[17] Such procedure is the process by which, upon specific request, an alleged error is made ripe for appellate review through express reservation. And there is a measure of honesty in this approach, grounded in the notions that appellate reversal of a jury's verdict based upon issues that were neither raised nor reserved in the court below — although exception was specifically requested — is fundamentally unfair and that procedural rules are in place to prevent such results.

Here, the trial court specifically asked for exceptions to the charge. Defense counsel neither objected nor reserved exceptions for post-conviction review. Leggon's claims of error regarding the jury charge are thus waived.[18]

3. Leggon next contends "[t]he trial court erred in not allowing Appellant to cross-examine the GBI agent in regard to what the agent learned from Ebony Roby concerning the gun that the decedent was carrying to shoot Appellant." As a factual basis for such question, Leggon claims that, "[a]ccording to testimony of one of Appellant's friends, Otis Brinson, Ebony Roby told him and Appellant that decedent was carrying a .45 pistol to use on Appellant." We have reviewed the testimony of Brinson, however. In fact, Brinson testified that *Priscilla* Roby — Ebony's sister — allegedly made the statement in question. Moreover, Leggon did not call Ebony Roby to testify in order to ascertain what, if anything, she told the investigating officer. And when Priscilla Roby was called by the defense, she testified that no one told Brinson and Leggon that the victim was carrying a weapon.

"The scope of cross-examination is within the sound discretion of the trial court, and in the absence of an abuse thereof, will not be disturbed by this Court."[19] Since Leggon's cross-examination question about Ebony Roby had no factual basis and also called for hearsay, we will not find an abuse of discretion in sustaining an objection thereto.

4. We find no reversible error in permitting witness Coley to testify about statements made by Williams just prior to the shooting. The trial court properly admitted the complained-of hearsay statements as either res gestae or as made in the presence of the defendant.[20] Further, Williams took the stand and testified to precisely the

---

[17] Id. at 838.

[18] *Roulain v. Martin*, 266 Ga. 353 (1) (466 SE2d 837) (1996); *Clifford v. State*, 266 Ga. 620, 621 (469 SE2d 155) (1996); *Lucas v. State*, 265 Ga. 514, 516 (2) (458 SE2d 103) (1995); *Russell v. State*, 264 Ga. 121, 122 (3) (441 SE2d 750) (1994); *McCoy v. State*, 262 Ga. 699, 700 (2) (425 SE2d 646) (1993).

[19] *Demetrios v. State*, 246 Ga. App. 506, 510 (3) (541 SE2d 83) (2000).

[20] *Jarrett v. State*, 265 Ga. 28, 29 (2) (453 SE2d 461) (1995); *Andrews v. State*, 249 Ga.

same facts. "Evidence which is cumulative of other legally admissible evidence of the same fact[ ] renders harmless admission of incompetent evidence."[21]

5. Next, Leggon contends the trial court denied him a thorough and sifting cross-examination by limiting defense counsel's use of the words "crew" and "posse" when referring to the victim and those of his friends who were present at the city gym. We disagree.

(a) Even a cursory review of the transcript shows that, throughout the entire trial, both defense counsel and the prosecutor repeatedly used the word "crew" to refer to the victim and his friends. Thus, Leggon's complaint about a limitation on the term "crew" is completely without factual basis.

(b) At trial, Leggon argued that "the term 'posse' . . . is a common term used by kids in this community all over the country as far as friendship, close friendship. I'm not saying gangs or anything like that." Before this Court, however, Leggon argues that "[t]here was strong evidence of gang type relationship between the victim's friends and the victim," making the use of the word "posse" relevant because "it is the defense attorney's duty to cast doubt and aspersions on the victim, and, as in this case, the victim's friends."

Just as we decline to recognize a "duty" on the part of a defense attorney to cast aspersions on a victim and his friends, we likewise reject Leggon's contention that the term "posse" implies only "close friendship." While this judicial body solemnly undertakes its cardinal obligation to uphold profoundly important principles of law, such lofty duty does not blind us to the commonalities of human experience. Nor do we fail to recognize a ruse when we see one. The term "posse" as it is currently used implies gang membership, not simply close friendship.[22] And, indeed, from the record it appears that the gang-related inference such term raises was the rationale for its use by defense counsel, despite protestation to the contrary in the court below. In this case, however, there was no evidence of gang activity. Thus, the trial court did not abuse its discretion in sustaining the State's objection to the term "posse."[23]

---

223, 225 (290 SE2d 71) (1982); *Harrison v. State*, 238 Ga. App. 485, 487-488 (518 SE2d 755) (1999).

[21] (Citations and punctuation[ ] omitted.) *Mells v. State*, 206 Ga. App. 163, 165 (2) (424 SE2d 844) (1992). See also *Abrams v. State*, 272 Ga. 63, 64-65 (2) (525 SE2d 86) (2000) (admission of hearsay statement harmless where witness testifies to same events at trial as those portrayed in her statement).

[22] See Gang Members and Delinquent Behavior, U. S. Dept. of Justice, Juvenile Justice Bulletin, June 1997, fn. 2 (the term "posse" used synonymously with "street gang" in order to identify gang members). See also, e.g., *Johnson v. State*, 221 Ga. App. 267, 270 (3) (471 SE2d 46) (1996) (gang-related evidence that victim was member of the Reynoldstown Posse not relevant).

[23] *Demetrios v. State*, supra at 510.

6. Leggon next contends his question to the investigating officer, "Why is it that you wear a pistol or another weapon," was somehow relevant to Leggon's claim of self-defense and that the trial court denied him a thorough and sifting cross-examination by sustaining an objection thereto. Yet, when the trial court sustained the State's relevancy objection, defense counsel replied, "Okay," and moved on. "No matter how erroneous a ruling of the trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal."[24] Accordingly, the instant claim of error is waived.

Perhaps in recognition of this fact and in awareness of the Supreme Court of Georgia's recent holding in *Paul v. State*[25] wherein — regardless of waiver — all claims raised under the banner of OCGA § 17-8-57 must be reviewed for plain error, Leggon also contends the trial court's statement, "That is sustained," made in response to the State's objection "rose to the level of commentary on the evidence by the court" in violation of OCGA § 17-8-57. However, "[t]he statutory inhibition (OCGA § 17-8-55)[26] against an expression or intimation of opinion by the trial court as to the facts of the case does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence."[27] Accordingly, we do not find that the trial court's simple statement sustaining an objection in any way implicates OCGA § 17-8-57. And we decline to address such patently meritless claim of error simply because Code section 17-8-57 is invoked.

7. Finally, Leggon contends the State failed to prove that the homicide of the victim occurred on the specific date alleged in the indictment and, thus, the trial court erred in not directing a verdict based on such "material variance." We disagree.

> [W]here the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offense occurred at a

---

[24] (Punctuation omitted.) *Jenkins v. State*, 246 Ga. App. 38, 39 (3) (539 SE2d 542) (2000).

[25] 272 Ga. 845 (537 SE2d 58) (2000).

[26] Former Code section 17-8-55, relating to a judge's expression of opinion as to matters proved or guilt of accused, was redesignated as Code section 17-8-57 by Ga. L. 1985, p. 1190, § 1.

[27] (Citations and punctuation omitted.) *Whitt v. State*, 215 Ga. App. 704, 709 (4) (452 SE2d 125) (1994). See also *Rowe v. State*, 266 Ga. 136, 139 (2) (464 SE2d 811) (1996).

time substantially different from that alleged in the indictment.[28]

The indictment in this case alleged that the victim was murdered "on or before September 29, 1996," and such date was not pled as a material allegation of the indictment. The evidence showed that Leggon shot the victim on August 29, 1996, which date was included in the "on or before" time frame stated in the indictment and was within a month of the specific date listed, i.e., well within the seven-year statute of limitation. Accordingly, there was no error.

Notwithstanding the above, Leggon attempts to show surprise and prejudice by arguing that "Appellant's self-defense revolved around facts known to Appellant on September 29, 1997," while, "[a]ll witnesses against Appellant testified as to a series of events that took place on August 29, 1997."[29] However, Leggon put forward a claim of self-defense, not alibi. We will not lend credence to an argument that Leggon's alleged acts of self-defense in killing the victim were factually dependent on the *date* he killed the victim. There is no showing that Leggon was not keenly aware of the specific facts surrounding the incident, regardless of the date alleged in the indictment. Under the circumstances, the indictment charging Leggon with the murder of the victim "on or before September 29, 1996," was sufficient to allow Leggon to prepare his claim of self-defense and to protect against double jeopardy concerns.[30]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED MAY 3, 2001.

*Keith M. Morris,* for appellant.
*Stephen D. Kelley, District Attorney,* for appellee.

---

[28] (Citations and punctuation omitted.) *Davidson v. State*, 231 Ga. App. 605, 608 (2) (b) (499 SE2d 697) (1998).

[29] In his brief, Leggon incorrectly uses 1997 as the incident year, while the evidence and the indictment show 1996 as the year in question.

[30] *Demetrios v. State*, supra at 512 (6).