### A02A0047. BRUCE v. THE STATE.
(555 SE2d 819)

ELDRIDGE, Judge.

A Richmond County jury found Jacklyn E. Bruce guilty of aggravated assault, hijacking a motor vehicle, and possession of a knife during the commission of a crime. He appeals, challenging the sufficiency of the evidence, the effectiveness of his trial attorney, and the trial court's charge to the jury. After careful review of the errors as enumerated, we affirm.

Viewed in a light to uphold the jury's verdict,[1] the evidence shows that at approximately 2:00 a.m. the victim, a Radio Cab driver, was waiting for a fare at a cabstand located outside the Honky Tonk lounge in the 1600 block of Gordon Highway in Augusta. Bruce, who was "very intoxicated," approached. Bruce asked the victim to "take him for a ride" without giving an address. Pursuant to company policy, the victim asked to be paid $25 in advance because of Bruce's intoxication and ambiguous destination. Bruce paid the money, and the victim followed Bruce's directions "eastbound toward the city [Augusta]" to the Hyde Park/Aragon Park area of Dan Bowles Road, an area known for high drug crime. When the victim informed Bruce that he did not travel in that area past a certain hour

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

of the evening, Bruce produced a "long stainless steel black-handled knife" and told the victim, "Motherfucker, you got my money. Take me where I want to go." So, the victim took him.

Thereafter, Bruce met with a man on Dan Bowles Road and purchased what appeared to be crack cocaine. After leaving the area and heading toward Old Savannah Road, Gordon Highway, Bruce discovered that he had been sold wax. He told the victim, "These motherfuckers have sold me wax. Take me back." Bruce was now in the front seat of the car with the knife in his left hand toward the victim. The victim complied with the order, and Bruce purchased an additional substance. They then headed back down Dan Bowles Road. The victim testified that

> [a]t this time we come back out to Gordon Highway side. There's an Amoco station, I believe, just at Gordon Highway. He [Bruce] tells me he's dehydrated, he needs a Pepsi-Cola; asked me to park directly in front of the door. I did not see a weapon or anything other than his knife, but he indicated he had what it takes to take care of anything that happened if I caused him any problem. . . . That meant to me he had a weapon to hurt me and the clerk, other than the knife. . . . He didn't say he had a gun. He never said he had a gun, but he indicated by tapping his belt, "I got what it takes to take care of you if you cause me any problem."

The victim entered the Amoco and bought Bruce a bottle of Pepsi-Cola. The Amoco clerk testified at trial that, as he was leaving, the victim "whispered to me to call the police because a man had a knife on him in his cab." The Amoco clerk testified that the victim appeared "scared." She complied with his request, called the police, and gave them the information.

After the victim returned to the cab, Bruce directed him toward Highway 25. While heading "south on Highway 25," the taxi cab dispatcher came on the radio, stating to the victim, "I have the police on the line. What's your problem." The victim testified that when Bruce heard this information, he "panicked and really began to — at this time I really got scared. I was afraid I was going to be hurt. . . . And that's when I really began to fear that he is going to do something with this knife other than just force me to go where he wanted to go." Bruce, still sitting beside the victim in the front seat of the cab holding the knife toward the victim, "was constantly looking around for police cars. He [Bruce] said 'I better not see a police car, better not see a police car.'" Immediately thereafter, the victim spotted a police car. He testified that "I turned rapidly into a RaceTrac station, I believe; I'm not sure. It's a station, it's a convenience store at Cadden

and Highway 25. I jumped and run one way, and when I looked back he was going the other way, and that made me happy. The police showed up about the time all this was going on."

The victim gave an officer a description of Bruce, as well as the direction in which Bruce had fled up Cadden Road. The officer testified that he "proceeded up the street in the patrol car with the spotlight turned to the left, the last known direction of the suspect. And about the third or fourth house up the street to my left, I observed a suspect in the backyard trying to hide behind a large bunch of grass about six or eight inches high." After calling for backup, the officer exited his vehicle and approached the grassy area in which he had last seen the suspect. A Pepsi-Cola bottle and a large black-handled knife were found in that area of the grass. Bruce was located approximately 12 feet away lying flat on the grass attempting to hide under a plastic trash bag of aluminum cans. Thereafter, several chunks of wax were found in the backseat of the victim's cab. At trial, when asked about venue, the officer testified that "all this [was] taking place" in Richmond County.

Shortly after his arrest, Bruce volunteered a statement that the victim and he had been drinking Canadian Mist whiskey and smoking marijuana together; that an argument ensued; and that the victim wrested Bruce's knife away from him and chased Bruce with it. The investigating officer also took a statement from the victim and, in deference to Bruce's version of events, administered a breath test to the victim which showed his blood alcohol content as 0.00. At trial, the officer testified that this occurred in Richmond County. *Held*:

1. Bruce claims that the evidence was insufficient to support his conviction and insufficient as to venue in Richmond County.

> [A]ny challenge to the sufficiency of the evidence supporting a jury's verdict of guilty must be viewed to uphold the verdict. Since a jury found [Bruce] guilty, this Court looks only to see if there is a factual basis from which a rational trier of fact could conclude beyond a reasonable doubt that a guilty verdict was warranted. We do not judge the credibility of the witnesses. We do not revisit conflicts in the evidence. And we will not simply substitute our opinion for that of the jury. So long as there is some competent evidence to support each element of the offense(s) as charged, the jury's verdict will be upheld.[2]

---

[2] (Footnotes omitted.) *Bacon v. State*, 249 Ga. App. 347, 348-349 (1) (548 SE2d 78) (2001).

(a) Here, the victim's testimony alone established the essential elements of aggravated assault, hijacking a motor vehicle, and possession of a knife during the commission of a crime.[3] The victim's testimony was corroborated by physical evidence discovered at the time of Bruce's arrest, as well as by testimony from the Amoco clerk that the victim was scared and told her that there was a man with a knife in his cab; she called the police at his insistence.

Bruce contends the evidence was insufficient to convict on aggravated assault because the victim testified Bruce put a knife to his *neck*, as opposed to his throat as alleged in the indictment. The record shows there is a conflict in the evidence as to this point in that the officer to whom the victim gave his statement testified that on the incident date the victim stated that Bruce put a knife to his "throat." The victim, on the other hand, testified that he did not remember making that statement — as well as other statements — and that Bruce did not hold a knife to his throat, but to his "neck." However, the victim also testified that his memory would have been better on the incident date. The resolution of any conflict in the evidence was for the jury.[4] Since there is a factual basis for finding Bruce held a knife to the victim's throat as per the indictment, we will not go behind the jury's resolution of such conflict.

Bruce contends the evidence was insufficient to support his conviction for hijacking a motor vehicle because the victim was never separated from his vehicle. However, the offense of hijacking a motor vehicle is complete when a "person while in possession of a firearm or weapon *obtains* a motor vehicle" from the victim.[5] The concept of "obtaining" a motor vehicle from its owner encompasses the notion of acquiring control thereof, regardless of whether the victim remains with the vehicle.[6]

Bruce claims the evidence was insufficient to support his conviction for possession of a knife during the commission of a crime because the jury was not given a measuring device in order to determine that the blade of such knife measured three inches or more pursuant to statutory requirements. However, the knife at issue was introduced into evidence for the jury's consideration, and, as a matter of fact, the knife "had a six-inch blade." Further, defense counsel stated at trial that the "Buck 119 series" knife had a blade of "about six inches." The indictment charged that Bruce did have "on his per-

---

[3] OCGA § 24-4-8 ("testimony of a single witness is generally sufficient to establish a fact").

[4] *Powell v. State*, 249 Ga. App. 344, 346 (548 SE2d 447) (2001).

[5] (Emphasis supplied.) OCGA § 16-5-44.1 (b).

[6] See *Perkinson v. State*, 273 Ga. 491-492 (542 SE2d 92) (2001). See also Black's Law Dictionary (5th ed. 1979), p. 972: "Obtain. To get hold of by effort . . . to acquire, in any way."

son a knife having a blade of three or more inches in length," and the trial court instructed the jury that the State must prove the offense as charged in the indictment. With the knife in evidence and the jury able to determine that the blade was well over three inches long, a measurement of common knowledge, such is sufficient to support the jury's verdict.[7]

(b) Likewise, we find the evidence of venue sufficient. "Circumstantial as well as direct evidence may establish venue."[8] With regard to this case, a police officer testified that "all this" was taking place in Richmond County. No other county was at issue, and there was no evidence that venue was proper elsewhere. Further, the testimony from the cab driver/victim was extremely detailed as to the exact locations involved in the incident, from the Honky Tonk lounge on Gordon Road; from Gordon Road to Dan Bowles Road and the Hyde Park/Aragon Park area; from the Hyde Park/Aragon Park area back to Gordon Highway and the Amoco station at Gordon Highway; from the Amoco station to Highway 25 and the precise corner on Highway 25 and Cadden Road where the victim escaped; and from the backyard on Cadden Road where Bruce was captured, four houses away from the Amoco. These specific facts, coupled with the officer's testimony that all this occurred in Richmond County, made it possible for the jury — residents of Richmond County, all — to determine the venue. As with all other essential elements of an offense, we will not weigh the evidence of venue, as such is a function of the jury.[9] There was a factual basis upon which the jury could find beyond a reasonable doubt that the incidents in question occurred in Richmond County. That is sufficient.

2. Bruce next claims he was afforded ineffective assistance of counsel at trial.

The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*[, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984),] asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable [probability] that the outcome of the proceedings would have been different, but for counsel's deficiency. A trial court's finding that an accused received effective assistance will be affirmed on

---

[7] *Johnson v. State*, 247 Ga. App. 157, 161 (6) (543 SE2d 439) (2000).

[8] *Jordan v. State*, 242 Ga. App. 547, 549 (2) (528 SE2d 858) (2000).

[9] *Cook v. State*, 273 Ga. 828, 830 (2) (546 SE2d 487) (2001) ("[a]ll issues concerning the weight and credit to be given the evidence concerning these statements [of venue] were for the jury").

appeal unless that determination is clearly erroneous. And a trial court is authorized to find the decision not to call certain individuals as witnesses a reasonable defense strategy.[10]

(a) Bruce first contends that his defense counsel was ineffective for failing to call specific witnesses to testify at trial regarding Bruce's physical condition, the amount of money he had on his person on the date in question, and to impeach the testimony of the Amoco clerk as to whether she told the victim he should stay in the convenience store and she would lock the doors.

At the motion for new trial, Bruce's trial counsel testified that he interviewed the witnesses at issue and determined that the information which could be obtained therefrom was either irrelevant, unhelpful, not impeaching, or could be presented to the jury through Bruce's testimony and physical demonstrations so as to retain the right to closing argument: "And I considered the right to have final argument very important in this case and I don't think that these witnesses really added anything."

We have reviewed the testimony of the witnesses, both at trial and at the hearing on the motion for new trial. We cannot find fault with defense counsel's assessment.

(i) Three of the witnesses about whom Bruce complains did not testify at trial or at the new trial hearing, and thus the content of their testimony is mere speculation.

(ii) Further, although Bruce claims that he wanted his doctor to testify about the disability he suffered due to an earlier automobile accident, the doctor in question had not seen Bruce for three years prior to the incident date and could not testify as to his current physical condition. Indeed, Bruce testified as to such and displayed to the jury the extent of his injuries.

(iii) In addition, another witness about whom Bruce complains, the owner of the store wherein Bruce bought the Buck knife, did not testify to the facts as Bruce claimed he would.

(iv) And finally, the investigator hired by his defense counsel could not impeach the Amoco clerk with an inconsistent statement, since the clerk testified that she did not remember whether or not she told the victim to remain in the Amoco with the doors locked: "I might have, but like I say, I don't remember telling him that. I could have." Thus, the investigator's testimony, if impeaching at all, would be so only collaterally, making the loss of closing argument a significant factor in the decision whether to call such witness. Moreover,

---

[10] (Footnotes omitted.) *Webb v. State*, 249 Ga. App. 214, 216-217 (2) (547 SE2d 767) (2001).

evidence that the Amoco clerk told the victim to stay inside behind locked doors came out through the testimony of an investigating officer. "The decision as to which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[11]

(b) Bruce also contends that his trial attorney was ineffective for failing to object to the prosecutor's line of questioning about Bruce's receipt of disability checks while working as a part-time mechanic. However, this issue was not raised on amended motion for new trial, and Bruce's trial attorney was not questioned with regard thereto. "Any ineffective counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial court so that the challenge can be heard at the earliest practicable moment, i.e., during the hearing on the amended motion. [Cit.]"[12]

3. In his remaining four enumerations of error, Bruce challenges specific portions of the trial court's charge to the jury as containing reversible error. However, at the conclusion of the jury charge, the trial court stated, "We'll be in recess now till we hear from the jury, unless you have some exceptions to the charge." To which defense counsel stated, "None at this time, Your Honor."[13] Where objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge.[14] "Here, the trial court specifically asked for exceptions to the charge. Defense counsel neither objected nor reserved exceptions for post-conviction review. [Bruce's] claims of error regarding the jury charge are thus waived."[15]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 24, 2001 —
RECONSIDERATION DENIED NOVEMBER 16, 2001.

*Sam B. Sibley, Jr.*, for appellant.
Jacklyn E. Bruce, *pro se.*

---

[11] (Punctuation omitted.) *McCant v. State*, 234 Ga. App. 433, 436 (3) (506 SE2d 917) (1998).

[12] (Punctuation omitted.) *Thompkins v. State*, 272 Ga. 835, 836-837 (2) (c) (536 SE2d 747) (2000).

[13] Thereafter, Bruce's trial attorney specifically excepted to a recharge on the definition of kidnapping, an offense for which the jury acquitted Bruce. Notably, Bruce does not allege the failure to reserve objection to the jury charge as a basis for his claim of ineffective assistance of counsel.

[14] *Rivers v. State*, 250 Ga. 303, 309 (7) (298 SE2d 1) (1982).

[15] *Leggon v. State*, 249 Ga. App. 467, 471 (2) (549 SE2d 137) (2001).

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.