A03A1238. McPETRIE v. THE STATE.
A03A1239. PASCHAL v. THE STATE.
A03A1240. RAINES v. THE STATE.
(587 SE2d 233)

RUFFIN, Presiding Judge.

Colin McPetrie, William Paschal, and David Alan Raines were charged with kidnapping, two counts of aggravated assault, false imprisonment, and battery. Following a trial, a jury found the defendants guilty of simple battery as a lesser included offense of aggravated assault and false imprisonment. It also found McPetrie and Paschal guilty of battery. The jury acquitted the defendants of the remaining charges. All three defendants have appealed. Because the cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, we affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence shows that Raines owned a business called Turf Management.

---

[1] See *Shue v. State,* 251 Ga. App. 50 (553 SE2d 348) (2001).

McPetrie leased space in Raines' building, and Paschal worked for McPetrie. Evidently, Raines and McPetrie had items stolen from their respective businesses, and they suspected that Raines' employee, Wesley Redditt, committed the thefts.

On September 1, 2001, Redditt was in his truck with Johnny Purcell when he received a page from Turf Management. Redditt called the business and spoke with McPetrie, who asked him to come by the shop. Redditt drove to Turf Management and went inside while Purcell waited in the truck. According to Redditt, he walked into a work bay with McPetrie and Paschal, and the door closed behind him. Redditt then turned and saw Raines standing in a doorway with a plastic bat in his hand. At that point, Redditt was pushed from behind, and he fell to the floor where he was held down by McPetrie and Paschal. The men then bound Redditt's wrists with duct tape.

According to Redditt, he was hit several times with the plastic bat and was "poked" with a wooden bat. Redditt testified that Paschal also used a stun gun on him. In addition, Redditt's assailants wrapped a chain around his ankles and, using a pulley, hoisted him by foot off of the floor. During this time, Raines, McPetrie, and Paschal questioned Redditt about "things missing from the shop." The three men discussed taking Redditt's truck, and Redditt informed them that Purcell was waiting for him in the truck. Raines, McPetrie, and Paschal then walked outside, leaving Redditt suspended from the ceiling. McPetrie and Paschal subsequently returned without Raines.

Purcell testified that, after he had waited in the truck for approximately one hour, Raines came outside and offered to take him home. After Raines dropped off Purcell, he returned and told McPetrie and Paschal to free Redditt. Raines cut the duct tape off Redditt's wrists and gave him some water. Afterward, Raines drove Redditt to Purcell's house. According to Purcell, when Redditt arrived, he looked like "his feathers had been ruffled a little bit" and walked as though he was in pain.

The next day, Redditt went to the hospital. Redditt testified that his feet were numb, his back and stomach were covered in welts, and his ribs and wrists were sore. Detective Bertolo, who interviewed Redditt at the hospital, testified that Redditt "had several bruises all over his body, back, stomach, back of his legs. He had some bruises on his arms, [and] slight bruises on his ankles." Bertolo subsequently drove to the building where Redditt alleged he had been assaulted and discovered lengths of chain, a roll of duct tape, and used duct tape in the trash.

Based upon this, and other evidence, the jury found McPetrie and Paschal guilty of simple battery, battery, and false imprison-

ment. The jury also found Raines guilty of simple battery and false imprisonment.

## Case No. A03A1238

1. On appeal, McPetrie challenges the sufficiency of the evidence supporting his conviction for false imprisonment. Pursuant to OCGA § 16-5-41 (a), "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." McPetrie argues that "[he] and his co-defendants detained Redditt under a legal authority." Specifically, McPetrie points to OCGA § 17-4-60, which provides, in pertinent part, that "[a] private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge." According to McPetrie, the evidence that Redditt had stolen from him justified his actions in detaining Redditt. We disagree.

"A private [person] has quite as much power to arrest a fugitive felon, where the emergency calls for immediate action, as a public officer, and while so doing, is equally under the protection of the law."[2] Assuming, for the sake of argument, that McPetrie had "immediate knowledge" that Redditt had committed a felony as required by OCGA § 17-4-60, the evidence nonetheless supports his conviction for false imprisonment. The record reveals that McPetrie detained Redditt either to bludgeon a confession out of him or administer his version of vigilante justice. And the defense of justification is not so broad as to permit a private citizen to mete out judgment as he sees fit.[3] It follows that this argument lacks merit.

McPetrie also contends that his conviction should be reversed due to "numerous material inconsistencies or unsubstantiated claims made by Mr. Redditt." It is axiomatic that the jury — not this Court — resolves conflicts in the evidence.[4] And "the jury, in arriving at a conclusion upon disputed issues of fact, may believe a part of the testimony of a witness and reject another part."[5] Here, the jurors considered the conflicts in the evidence and concluded that McPetrie was guilty of false imprisonment. As there is evidence to support this finding, we will not disturb it on appeal.

---

[2] (Punctuation omitted.) *Johnson v. Jackson*, 140 Ga. App. 252, 257 (3) (230 SE2d 756) (1976) (construing Code 1933, § 27-211, predecessor statute to OCGA § 17-4-60).

[3] See *Prayor v. State*, 214 Ga. App. 132, 133 (447 SE2d 155) (1994) (private citizen not authorized to use violent force to stop a fleeing suspect).

[4] See *Mann v. State*, 254 Ga. App. 869, 870 (563 SE2d 924) (2002); *Powell v. State*, 249 Ga. App. 344, 346-347 (2) (b) (548 SE2d 447) (2001); *Davison v. State*, 241 Ga. App. 685, 687 (2) (527 SE2d 285) (1999).

[5] *Powell*, supra at 347.

2. McPetrie also argues that the trial court erred in failing to give his requested jury charge on the defense of justification. Specifically, McPetrie contends that he was justified both in arresting Redditt and in defending himself against Redditt. For the reasons discussed in Division 1, the evidence demonstrates that McPetrie's actions in "arresting" Redditt were not justified. Moreover, McPetrie points to no evidence suggesting that he was acting in self-defense. And "it is not error to refuse [such] charge if there is no evidence to support it."[6]

Furthermore, justification is an affirmative defense, and as a general rule, a "defendant must admit the crime before he can raise [that] defense."[7] Here, McPetrie never admitted committing any of the offenses with which he was charged. Rather, his defense at trial focused on undermining Redditt's credibility and the police investigation of the alleged crimes. Under these circumstances, we find no error in the trial court's refusal to charge on the defense of justification.[8]

3. After the jury began deliberating, jurors requested a written copy of the trial court's jury instructions. Over objection, the trial court submitted a copy of the general charge, which did not include the court's verbal instruction regarding how to complete the verdict form. On appeal, McPetrie argues that the trial court erred in giving such partial instruction, which he contends could confuse the jurors. Again, we disagree.

"It is within the discretion of the trial court to give or not to give unrequested additional instructions when the jury requests a recharge on a particular point."[9] Moreover, a trial court may give the instructions to the jurors in written form.[10] Indeed, the practice of providing written instructions to jurors has been described as "beneficial."[11] Here, although McPetrie asserts that the submission of written instructions "could only serve to confuse the jury," he makes no cogent argument as to how jurors were actually confused. And we fail to see how the trial court's failure to provide additional instruction about how to complete the verdict form could have caused confusion. Under these circumstances, the trial court did not abuse its discretion in recharging the jury.[12]

4. Finally, McPetrie contends that the trial court erred in denying his motion for new trial based upon newly discovered evidence.

---

[6] *Code v. State*, 255 Ga. App. 432, 434 (4) (565 SE2d 477) (2002).

[7] Id.

[8] See id. at 434-435.

[9] *Miner v. State*, 268 Ga. 67 (2) (485 SE2d 456) (1997).

[10] See id.

[11] See *Anderson v. State*, 262 Ga. 26, 28 (3) (b) (413 SE2d 732) (1992).

[12] See *Miner*, supra.

Prior to trial, Redditt allegedly signed a confession in which he admitted to stealing from Raines. The document was turned over to an attorney who died, and the parties were unable to locate the document before trial. After the jury rendered its verdict, however, the document was discovered. According to McPetrie, the confession "is material because it weighs directly on the requested justification defense."

We review a trial court's ruling on a motion for new trial based upon newly discovered evidence under the abuse of discretion standard.[13] In order to demonstrate entitlement to a new trial, a defendant must show, inter alia: (1) that he gained knowledge of the evidence after the trial; (2) that lack of due diligence is not the cause of the defendant's failure to obtain the evidence sooner; (3) that the evidence is so material that it likely would produce a different verdict; (4) that the evidence is not merely cumulative; and (5) that the evidence is not being offered solely to impeach the credibility of a witness.[14]

Assuming for the sake of argument that the evidence was "newly discovered," we find no abuse of discretion in the trial court's refusal to grant a new trial as it is improbable that the evidence would have produced a different verdict. Pretermitting whether Redditt stole from Raines or McPetrie, the men were not justified in binding Redditt, hanging him from his feet, and striking him.

Moreover, Redditt admitted at trial to signing a document under duress while imprisoned by McPetrie and the others, but claimed he did so "in fear for [his] life to get down off of those chains." Given this testimony, the jury would have been authorized, but not compelled, to discount the alleged confession. Finally, Redditt's "confession" is cumulative. In his testimony, Redditt acknowledged that he had been convicted of theft on three occasions, and another witness testified that he told Raines that Redditt had stolen from him. Thus, the jury was aware of the possibility that Redditt, a convicted felon, might have stolen from his assailants prior to the attack. Under these circumstances, the trial court did not abuse its discretion in denying McPetrie's motion for new trial.

### Case No. A03A1239

5. On appeal, Paschal contends that the trial court erred in limiting his cross-examination of Purcell regarding an alleged "ongoing criminal enterprise involving [Purcell] and Mr. Redditt." The record reveals that, although Raines' attorney attempted to cross-examine

---

[13] See *Brown v. State*, 250 Ga. App. 697, 699 (552 SE2d 886) (2001).
[14] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

Purcell regarding a check kiting scheme, Paschal's attorney asked no such questions. The trial court disallowed the line of questioning, and Paschal raised no objection to the trial court's ruling. Thus, Paschal never raised the alleged error before the trial court, and we will not address an issue raised for the first time on appeal.[15]

6. Prior to trial, Paschal submitted a written request to charge for the offense of simple battery, which can be a lesser included offense of both aggravated assault and battery.[16] During the charge conference, the trial court indicated that it would instruct the jury on simple battery as a lesser included offense of aggravated assault. The attorneys for McPetrie and Raines discussed whether the simple battery charge should also be given as a lesser included offense of battery. As both simple battery and battery are misdemeanors with the same potential sentence,[17] McPetrie's lawyer argued that it might confuse jurors to instruct them in this manner. The trial court noted that the two offenses carry the same punishment and thus declined to instruct the jury on simple battery as a lesser included offense. Although Raines' attorney expressly acquiesced in the ruling, Paschal's attorney remained silent.

On appeal, Paschal contends that the trial court erred in failing to instruct the jury on simple battery as a lesser included offense of battery. The State, however, contends that Paschal's silence during the colloquy essentially amounted to acquiescence to the trial court's ruling. We agree.

Although a defendant in a criminal trial is not required to except to jury instructions in order to preserve objections for appellate review, "the right to raise alleged errors in a charge may be lost in certain instances."[18] For example, the right to appeal may be lost

> where a defendant's tactical trial plan justifies a finding of procedural default, where error in the charge is induced by the actions of defense counsel, or where defense counsel in response to an inquiry by the trial judge plainly states that he has no objections to the charge as given.[19]

Here, the trial court gave Paschal's written request to charge on simple battery with respect to the aggravated assault charge. Accordingly, this is not a case in which the trial court completely rejected a

---

[15] See *Lewis v. State*, 271 Ga. 500, 501 (2) (521 SE2d 193) (1999) (*objection of co-defendant does not preserve issue for nonobjecting defendant*).

[16] See *Fulton v. State*, 232 Ga. App. 898, 899 (1) (503 SE2d 54) (1998) (aggravated assault); *Ross v. State*, 214 Ga. App. 385 (448 SE2d 52) (1994) (simple battery).

[17] See OCGA §§ 16-5-23 (b); 16-5-23.1 (c).

[18] *Leggon v. State*, 249 Ga. App. 467, 469 (2) (549 SE2d 137) (2001).

[19] (Citations omitted.) *Lumpkin v. State*, 249 Ga. 834, 835 (1) (295 SE2d 86) (1982).

written request. If Paschal also contended that his request extended to the charge for battery, it was incumbent upon him to raise this contention during the parties' discussion of the issue. Paschal's silence during the colloquy on the *very issue* upon which he predicates his appeal is tantamount to remaining silent when a trial court specifically asks for exceptions.[20] Under these circumstances, Paschal's silence induced the alleged error, and it is deemed waived on appeal.[21]

7. Paschal also contends that the trial court erred in refusing to charge the jury on the defense of justification and in giving jurors a written copy of the general jury charge.[22] For the reasons discussed in Divisions 2 and 3, these enumerations of error lack merit.

## Case No. A03A1240

8. Prior to trial, Raines moved to sever his trial from that of his co-defendants, which the trial court denied. On appeal, Raines argues that the trial court erred in failing to sever his trial because the joint trial caused confusion concerning the evidence and the law.

To prevail on a motion for severance, Raines "must do more than merely raise the possibility that a separate trial might give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process."[23] In determining whether severance is appropriate, a trial court considers the following factors: "(1) whether a joint trial will create confusion; (2) whether there is danger that evidence implicating one defendant will be considered against the other; and (3) whether the co-defendants have antagonistic defenses."[24] Absent an abuse of discretion, we will not disturb a trial court's ruling regarding severance.[25]

In support of his argument, Raines points to a report made by Detective Bertolo indicating that McPetrie and Paschal bound Redditt with duct tape and chains while Raines was driving Purcell home. At trial, however, Redditt testified unequivocally that Raines was present when he was bound. And, on cross-examination, Bertolo

---

[20] See *Leggon*, supra at 471 (defendant procedurally defaults when trial court asks for exceptions to charge and defendant fails either to object or to reserve exceptions).

[21] See id.

[22] To the extent that Paschal argues that the trial court erred in failing to clarify for the jury the difference between battery and simple battery, we note that this argument does not fall within the enumerated error. However, a party cannot expand an enumeration of error through argument or citation in a brief. See *Gunsby v. State*, 248 Ga. App. 18, 22 (3) (545 SE2d 56) (2001).

[23] (Punctuation and footnote omitted.) *Gooch v. State*, 249 Ga. App. 643, 645 (2) (549 SE2d 724) (2001).

[24] Id. at 645-646.

[25] See id. at 646.

testified as to his understanding that Raines was present when Redditt was bound.

On appeal, Raines implies that the competent evidence shows that he was *not* present during this part of the attack and that the jury improperly considered evidence pertaining to McPetrie and Paschal against him. We disagree. Redditt clearly testified that Raines was present, and this testimony was admissible regardless of whether Raines was tried separately or jointly with his co-defendants. Accordingly, we fail to see how Raines was prejudiced merely because the testimony was heard during a joint trial. It follows that the trial court did not abuse its discretion in denying Raines' motion for severance on this basis.

9. Raines argues that he is entitled to a new trial because he received ineffective assistance of trial counsel. According to Raines, his attorney was ineffective "for failing to produce substantive evidence raising a reasonable doubt as to [his] guilt." Specifically, Raines points to his lawyer's failure to tender the police report to impeach Detective Bertolo, who testified — contrary to the report — that Raines was present when McPetrie and Paschal bound Redditt.

"To prove ineffective assistance of counsel, [Raines] 'must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.' "[26] To succeed in this claim, Raines must overcome a strong presumption that his attorney's performance fell within a wide range of reasonable, professional conduct.[27] "Without trial counsel's testimony, it is extremely difficult to overcome this presumption."[28]

Raines did not have his trial attorney testify at the hearing on his motion for new trial. Thus, the record contains no evidence as to why his attorney failed to tender the police report in an attempt to impeach Bertolo. We note that Raines' attorney questioned Redditt extensively regarding discrepancies between his trial testimony and the information that he gave to the police. Perhaps trial counsel determined that he was better served attempting to impeach Redditt — who provided the information to Bertolo — than the detective, who merely served as a scribe. Or perhaps the attorney concluded that attempting to discredit a law enforcement officer might alienate jurors. Indeed, we can conceive of several explanations for trial counsel's decision, which could be characterized as strategic. Under these circumstances, Raines failed to carry his burden of establishing "that the purported deficienc[y] in his trial counsel's representation [was] indicative of ineffectiveness and [was] not [an] example[ ] of a con-

---

[26] *Rogers v. State*, 253 Ga. App. 675, 677 (3) (560 SE2d 286) (2002).

[27] See id.

[28] (Punctuation omitted.) *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).

scious and deliberate trial strategy."[29] It follows that this claim of error presents no basis for reversal.[30]

10. Finally, Raines challenges the sufficiency of the evidence supporting his conviction for false imprisonment and contends that the trial court should have granted his motion for new trial based on the discovery of Redditt's alleged confession. For the reasons set forth in Divisions 1 and 4, these claims of error lack merit.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 5, 2003.

*Jimmy D. Berry*, for appellant (case no. A03A1238).

*Clarke & Anderson, James S. Anderson*, for appellant (case no. A03A1239).

*Debra H. Bernes, Nancy I. Jordan*, for appellant (case no. A03A1240).

*Patrick H. Head, District Attorney, C. Lance Cross, Amy H. McChesney, Assistant District Attorneys*, for appellee.

---

[29] (Punctuation omitted.) *Rogers*, supra at 678.

[30] See *Morgan*, supra; *Rogers*, supra; *Eller v. State*, 253 Ga. App. 573, 574 (1) (560 SE2d 60) (2002).