**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2013**

# In the Court of Appeals of Georgia

A13A0417. CARSTAFFIN v. THE STATE.

RAY, Judge.

Following a jury trial, Wilson Carstaffin was convicted on two counts of child molestation (OCGA § 16-6-4), two counts of sexual battery (OCGA § 16-6-22.1), and one count of enticing a child for indecent purposes (OCGA § 16-6-5). He appeals from his convictions and the denial of his motion for new trial, contending that he had ineffective assistance of counsel. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows the following facts. In 2007, the 12-year-old victim, L. H., was attending middle school. Carstaffin was an Atlanta police officer assigned to the middle school as a school resource officer. On November 30, 2007, L. H. approached Carstaffin during school

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

hours and informed him that she wanted to talk to him about a prior sexual assault involving four boys. After L. H. talked to him about the incident, Carstaffin gave L. H. his phone number and asked her if she would be willing to meet with him later, and L. H. agreed. Later that day, Carstaffin came to L. H.'s classroom and pulled her out of class. He told her that he wanted to pick her up after school and asked her to meet him on a street corner by the school in an area where other students would not see him picking her up.

After school that day, Carstaffin drove his personal vehicle to the arranged location and picked up L. H. While they were driving around, Carstaffin brought up the incident with the four boys, and he told L. H. that he wanted "to do [her] like the four boys did [her]." Carstaffin then made various inappropriate sexual remarks to L. H. Carstaffin also fondled L. H.'s breasts and her vaginal area, attempted to show her his penis, and asked her if she wanted to get a hotel room. After driving around for a couple of hours, Carstaffin dropped L. H. off near her house, and she walked home.

L. H. lived with her mother in Atlanta, and her father lived in Decatur. L. H. testified that her mother was waiting for her when she arrived home and that her father had come over to their house because he was worried and wanted to find out why she was late coming home from school. L. H. testified that she was worried

2

about getting in trouble and that she was reluctant to disclose that she had been with Carstaffin because she did not want to talk about what he had done to her. Nevertheless, she told them that she was late because she had been driving around and talking with Carstaffin. At trial, she also denied the implication that she was making up the story about Carstaffin to get out of trouble for coming home late. Although L. H. testified initially that she told her parents that night about everything that happened, she later testified that she told them about the sexual abuse the following morning when she woke up. L. H.'s father testified that L. H. informed him of the sexual abuse when she arrived home that night. When asked if she felt like her father was angry at her, L. H. responded "I don't know . . . [y]es."

The evidence against Carstaffin at trial consisted primarily of the testimony and prior statements of L. H, as there was no physical evidence of sexual abuse. Thus, the credibility of her outcry was critical to the prosecution's case. Carstaffin contends that he received ineffective assistance of trial counsel because his attorney failed to investigate and present evidence that L. H.'s father had used corporal punishment on L. H. in the past when she misbehaved and that the perceived threat of such

punishment for coming home late could have established a motive for L. H. to fabricate her initial outcry. [2]

In considering the trial court's ruling on a claim of ineffective assistance of counsel, this Court accepts "the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Handley v. State*, 289 Ga. 786, 787 (2) (716 SE2d 176) (2011).

> The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations omitted.) *Kendrick v. State*, 290 Ga. 873, 877 (4) (725 SE2d 296) (2012).

---

[2]At the new trial hearing, L. H.'s father acknowledged that he had used corporal punishment on L. H. when she was younger.

4

Further, we recognize that "[t]here is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

At the hearing on the motion for new trial, Carstaffin's trial counsel testified that his defense strategy was based on L. H.'s credibility and her propensity to make false allegations in general, as well as the integrity of her initial outcry to her parents. Trial counsel testified that he also sought to establish that L. H.'s subsequent disclosure of the sexual abuse to school officials and law enforcement was corrupted by the manner in which she was interviewed.

With regard to L. H.'s initial outcry to her parents, trial counsel claimed that he was "hyper-focused" on his attempt to introduce evidence that L. H. had previously made exaggerated or false allegations against her father concerning prior physical discipline, and that he did not actually determine whether there was ever any prior physical discipline that may have affected the integrity of her outcry.

Assuming, without deciding, that the failure to elicit testimony about prior physical discipline from the father constituted deficient performance, Carstaffin has

5

failed to show that this alleged deficiency prejudiced the defense. The record shows that Carstaffin's trial counsel got L. H. to admit that she was afraid of getting into trouble for coming home late on the evening of the incident. Furthermore, L. H. testified that she believed that she was in trouble when she got home, that her father was upset and angry, and that she felt that he was angry at her. . L. H.'s father likewise testified at trial that he was upset and angry that night, but that he was not angry at L. H. Thus, there was evidence presented which would have authorized the jury to conclude that L. H. had a motive to lie about the sexual abuse, i.e. -- to avoid being in trouble for coming home late. Although Carstaffin claims that his trial counsel's failure to investigate and present evidence of prior physical discipline weakened the defense's theory concerning L. H.'s motive to fabricate the allegations, Carstaffin has failed to show that there is a reasonable probability that the outcome of the proceedings would have been different based on the evidence that was presented at the hearing on the motion for new trial.

For the above reasons, we need not evaluate whether trial counsel's performance was deficient for failing to investigate the father's prior physical discipline of L. H., because Carstaffin has failed to establish that trial counsel's performance prejudiced his defense in this case.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

6