**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 27, 2013**

# In the Court of Appeals of Georgia

A13A1552. HAYMER v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Glenn Elliott Haymer of voluntary manslaughter and aggravated assault, and the trial court denied his motion for new trial. On appeal, Haymer challenges the sufficiency of the evidence. He also contends that the trial court made several impermissible comments during the trial, including a statement during the defense's cross-examination of a police detective indicating that it was "quite all right" for police officers to provide false information to a suspect during a custodial interview to "test" the suspect. Because the jury could have construed the trial court's statement as an expression of opinion on the evidence and on the detective's credibility, we must reverse and remand for a new trial.

Construed in favor of the verdict,[1] the evidence showed that the elderly victim rented an upstairs garage apartment in Floyd County. Haymer knew the victim, sometimes stayed in his apartment, and would smoke crack cocaine with him.

On the afternoon of April 4, 2011, a father and his son were driving down the street in front of the victim's garage apartment when they heard a loud crash. The father turned in his seat and saw the victim coming head-first through a closed glass window of the apartment. The window was located above a garage door, approximately ten feet from the ground. Upon seeing the victim strike the ground, the father and son immediately stopped their vehicle and ran to render aid. The father called 911 and attempted to speak with the victim, but he was too injured to respond.

Through the apartment windows, the father and son saw someone's shadow move quickly from one side of the apartment to the other. The son heard a noise coming from the back of the apartment, and he ran around the side of the building to investigate. When he looked around the corner, the son saw a man, who was wearing all black and carrying a black backpack, climbing out of another window of the apartment. The son asked him, "[W]hy did [you] do that old man like that?" The man responded that he had set the old man on fire and then fled from the scene.

---

[1] See *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004).

Emergency medical personnel and law enforcement arrived shortly thereafter. The victim's shirt was wet, and he appeared to be burned around his face and on his chest under his shirt. The victim was transported to a local hospital, where further examination revealed that he had suffered burns to approximately one-third of his body. Because of the severity of his burns, he was transported by helicopter to a burn center later that day. The victim, however, never recovered from his injuries and was unable to speak with the police before his death.

Detectives assigned to the case searched the victim's garage apartment after securing a search warrant. Although the first responders initially had detected a chemical odor, no flammable liquids were found in the apartment. There was no evidence of an explosion or fire damage, other than a toilet paper roll that appeared slightly burned. While the victim had tested negative for illegal drugs at the hospital, four crack pipes were found in his apartment. A cell phone also was discovered in the apartment, and a display screen on the phone indicated that it belonged to Haymer.

In addition to searching the apartment, the detectives interviewed the father and son who had been at the scene, as well as a woman who contacted them. The woman said that on the day of the incident, she had been smoking crack cocaine in a house located a few doors down from the victim's apartment. According to the woman,

3

there was a man whom she later identified as Haymer at the house smoking crack cocaine as well. Haymer left the house at one point to get more drugs. He returned about 15 to 30 minutes later, appearing agitated. The woman stated that Haymer, who was wearing dark clothing and had a dark bag with him, said that an old man had stolen his crack but that he "took care of him." A few minutes later, the woman heard sirens and left the house.

After being arrested and advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), Haymer agreed to speak with the detectives. During the interview, Haymer gave conflicting accounts of what had transpired. Haymer ultimately admitted that he had been at the apartment that day, but maintained that the victim was already burned when he got there and that the victim, injured and incoherent, dove through the window of his own accord. Haymer said that he then fled from the apartment with his backpack out of concern that he would be falsely accused of causing the victim's burns and his fall from the window.

Haymer was indicted for multiple offenses, including murder and aggravated assault for burning the victim "with an unknown substance and source of ignition" and causing him to fall from the apartment window. At trial, the State's theory of the case was that Haymer had gotten into an altercation with the victim over crack

cocaine, culminating in Haymer burning the victim with an unknown substance, throwing him out of the window, and then fleeing from the scene with the unknown substance in his backpack. The State relied on several witnesses to support its theory of the case, including the detectives, the father and son, the woman who contacted the detectives, the victim's treating physicians, and the medical examiner. The State also presented an audio recording of Haymer's interview with the detectives.

In contrast, the defense's theory of the case was that the victim was already burned when Haymer arrived at the apartment and then jumped out of the window because he was in a state of cocaine-induced "excited delirium." The defense presented an expert forensic pathologist who opined that this was a possible explanation of what had occurred. In giving her opinion, the defense expert addressed the negative urinalysis drug test performed on the victim at the hospital and explained why, in her view, it did not eliminate the possibility of cocaine-induced excited delirium. Additionally, the defense argued that the lack of forensic evidence of chemicals or burn marks on the victim's shirt indicated that the victim had put on his shirt after being burned, which the defense maintained was consistent with its theory that the victim had been injured before Haymer arrived at the apartment. The defense further argued that there was no evidence of a struggle in the apartment and that the

5

father, son, and woman who testified to smoking crack cocaine with Haymer were all convicted felons and thus were not credible witnesses. With respect to Haymer's conflicting statements to the detectives, the defense argued that both the detectives and Haymer had been playing "the interrogation game," that both withheld information from each other and were "not showing their hands," and that for this reason Haymer did not initially "put it all out on the table" upon being interrogated.

After hearing the conflicting testimony, the jury acquitted Haymer of murder but found him guilty of the lesser included offense of voluntary manslaughter and of aggravated assault. Haymer filed a motion for new trial, which the trial court denied, resulting in this appeal.

1. Haymer first contends that the evidence was insufficient to support his convictions for voluntary manslaughter and aggravated assault. We are unpersuaded.

A person commits voluntary manslaughter by causing "the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). A person commits aggravated assault, among other ways, by assaulting another "with any object, device, or instrument, which, when used offensively against a

6

person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). In determining whether the evidence was sufficient to support Haymer's convictions for involuntary manslaughter and aggravated assault,

> we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of [each] crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010).

Applying these principles, we conclude that the evidence presented at trial and summarized above – including the testimony of the father, the son, and the woman who saw Haymer before and after the incident – was sufficient to authorize a rational jury to find Haymer guilty beyond a reasonable doubt of voluntary manslaughter and aggravated assault. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). It was the role of the jury, rather than this Court, to resolve the conflicts in the witness testimony and thus to ascertain which version of events, the State's or Haymer's, was true. See *Rollins v. State*, 318 Ga. App. 311, 312 (733 SE2d 841)

(2012). Accordingly, there was sufficient evidence to support the verdict, and the trial court did not err in denying Haymer's motion for new trial on that asserted ground.

2. Haymer next contends that a remark made by the trial court during the defense's cross-examination of the lead police detective was an impermissible comment on the evidence and improperly conveyed an opinion regarding the credibility of that witness. Specifically, during the cross-examination of the lead detective who participated in the custodial interrogation of Haymer, defense counsel highlighted the fact that the detectives told Haymer that his fingerprints were on the cell phone found in the victim's apartment, even though the phone had never been dusted for fingerprints. Defense counsel's questioning of the detective proceeded as follows:

[DEFENSE COUNSEL]: There were never any fingerprints on the phone.

[LEAD DETECTIVE]: And if there was we didn't dust for any, no. It was just a tactic to see if he would be honest with us about where his phone was and who had his phone. And it worked.

[DEFENSE COUNSEL]: A dishonest tactic for honesty?

8

THE COURT: Argumentative. *And it's quite all right for the police officers to do that in order to test a person.* So move on.

(Emphasis supplied.) Haymer argues that the trial court's italicized comment violated OCGA § 17-8-57, necessitating a new trial. We agree.

"One of the trial judge's most critical duties is to maintain complete impartiality in fact and in appearance throughout the proceedings and, most importantly, in front of the jury." (Footnote omitted.) Paul S. Milich, Ga. Rules of Evidence § 2:3 (2012-2013 ed.). And "[e]very practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression." (Citations and punctuation omitted.) *Spivey v. State*, 38 Ga. App. 213, 216 (143 SE 450) (1928). This concern over impartiality and jurors' sensitivity to judicial expression is addressed in OCGA § 17-8-57, which provides:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

9

"It is error to violate even the spirit of this section." (Citation and punctuation omitted.) *Chumley v. State*, 282 Ga. 855, 857 (2) (655 SE2d 813) (2008). Furthermore, "[e]ven if defense counsel fails to raise an objection, if the trial court violates this statutory provision, we are required to order a new trial, and there can be no finding of harmless error." (Citations and punctuation omitted.) *Booker v. State*, __ Ga. App. __ (1) (Case No. A13A0812, decided June 13, 2013). See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010); *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006).

Given that a new trial is mandated if a trial court violates OCGA § 17-8-57, the central question is what specific type of comments by a court fall within the statutory prohibition. As we have explained,

> The purpose of this statute, at least in part, is to prevent the jury from being influenced by any disclosure of the judge's opinion regarding a witness's credibility. The credibility of a witness is a material fact in every case, and any questions of credibility are for the jury to decide. Therefore, anything which tends to uphold, to support, to disparage, or to lower the character and the resulting credibility of the witness is vitally connected with the facts of the case.

(Punctuation and footnotes omitted.) *Callaham v. State*, 305 Ga. App. 626, 627 (1) (700 SE2d 624) (2010). See *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51)

10

(2012). Thus, a trial court violates OCGA § 17-8-57 by making a statement which "could have [been] interpreted" by the jury as expressing a favorable opinion on a witness's credibility. *Murphy*, 290 Ga. at 461 (2). Furthermore, beyond the issue of witness credibility, a trial court violates the statute by offering an opinion in front of the jury on any disputed issue of material fact involved in the case. See *Patel v. State*, 282 Ga. 412, 413-414 (2) (651 SE2d 55) (2007); *Byrd v. State*, 307 Ga. App. 589, 590-592 (705 SE2d 690) (2011).

Applying these principles, the Supreme Court of Georgia in *Murphy*, 290 Ga. 459, concluded that the trial court violated OCGA § 17-8-57 in responding to an objection to a detective's testimony. The trial court responded to an objection and commented, "You're asking this Detective, who is a good detective, what is in . . . somebody else's head." Id. at 460 (2). The trial court further stated, "This [Detective] has worked a lot of cases and he's got a recollection and he's got a written memorandum and hopefully between the two of those and his good efforts we're going to find the truth of the matter." (Punctuation omitted.) Id. The Supreme Court held that the trial court's comments about the reliability of the detective and his investigatory techniques violated OCGA § 17-8-57 because they could have been

11

construed by the jury as expressing a favorable opinion on the detective's abilities and thus as bolstering his credibility. Id. at 461 (2).

The trial court's comment in the present case similarly violated OCGA § 17-8-57. Through its comment, the trial court gave its imprimatur to the interrogation techniques used by the detectives while interviewing Haymer. Consequently, as in *Murphy*, the trial court's comment could have been construed by the jury as expressing a favorable opinion on the lead detective's abilities and thus as bolstering his credibility, which was a disputed material fact in this case.

Furthermore, in *Dean v. State*, 168 Ga. App. 172, 174-176 (3) (308 SE2d 434) (1983), we held that the trial court's comment before the jury that a police interrogation complied with constitutional and statutory requirements constituted an impermissible expression of opinion. We reasoned that such a comment, which was made in the context of the trial court ruling on the admissibility of the defendant's statement to the police, improperly bolstered the credibility of the interrogating officer and invaded the province of the jury, which was charged with ultimately determining what weight, if any, to given to the defendant's statement. Id. See also *Chumley*, 282 Ga. at 856-858 (2); *Ray v. State*, 181 Ga. App. 42, 44 (3) (351 SE2d 490) (1986). Like in *Dean*, by intimating its approval of the lead detective's

12

interrogation techniques, the trial court bolstered the credibility of the detective and invaded the province of the jury, which was charged with ultimately determining what weight to afford the conflicting statements made by Haymer.

As the State notes in its brief, it is true that, generally speaking, "[a] trial judge's explanation for a ruling on an objection neither constitutes an expression of opinion nor amounts to a comment on the evidence." (Citations and punctuation omitted.) *Williams v. State*, 303 Ga. App. 222, 232 (8) (692 SE2d 820) (2010). See *Paslay v. State*, 285 Ga. 616, 618 (3) (680 SE2d 853) (2009) ("The rule set forth in OCGA § 17-8-57 does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence.") (citation and punctuation omitted). It follows that OCGA § 17-8-57 is not violated if the trial court simply "inquire[s] as to the direction defense counsel [is] going with a particular line of questioning and encourage[s] counsel to move forward." *Creed v. State*, 255 Ga. App. 425, 427 (1) (565 SE2d 480) (2002). But there nevertheless is a line that the trial court cannot cross when explaining the basis for its ruling. As the Supreme Court indicated in *Murphy*, 290 Ga. at 460-461 (2), gratuitous comments before the jury that go beyond explaining a ruling and plainly intimate the trial court's opinion on the credibility of a witness or on a disputed issue of material fact are improper under OCGA § 17-8-57.

See also *Boyd v. State*, 286 Ga. 166, 168 (3) (686 SE2d 109) (2009) ("*Pertinent* remarks made by a trial court in discussing the admissibility of evidence or explaining its rulings do not constitute prohibited expressions of opinion.") (citations and punctuation omitted; emphasis supplied). Here, the trial court went beyond ruling that defense counsel's question was argumentative to gratuitously comment on the propriety of the lead detective's interrogation techniques, and, therefore, the court's remark comes within the parameters outlined in *Murphy*.

Lastly, we note that the State relies upon *Smith v. State*, 292 Ga. 588, 589-590 (2) (740 SE2d 129) (2013), in arguing that there was no violation of OCGA § 17-8-57, but that case is distinguishable from the instant case. In *Smith*, the trial court, in instructing the prosecutor to narrow the scope of his direct examination of a police detective, referred to the detective as "a very thorough investigator" and stated that not "everything he found that day is relevant to the issues of this case." Id. at 589 (1). The Supreme Court of Georgia held that the trial court's comment did not violate OCGA § 17-8-57 because it occurred "solely in the context of explaining the court's concern for the orderly and efficient presentation of testimony, and to ensure that the State would not require [the investigator] to testify about everything he learned during the investigation." (Punctuation omitted.) Id. at 590 (2). The Supreme Court

14

distinguished *Murphy*, 290 Ga. at 460 (2), stating that the trial court's comment in that case "implicat[ed] witness credibility" and "went beyond explaining a ruling." *Smith*, 292 Ga. at 590 (2). The present case is more like *Murphy* than *Smith* because the trial court "implicat[ed] witness credibility" and "went beyond explaining a ruling" by gratuitously commenting on the propriety of the lead detective's interrogation techniques after ruling that defense counsel's question to the detective was argumentative.

For these reasons, the trial court committed reversible error in commenting to the jury that it was "quite all right" for detectives to provide false information to a suspect during a custodial interview to "test" the suspect.[2] "Given the mandatory nature of OCGA § 17-8-57 and the case law interpreting it, we must reverse [Haymer's] conviction and remand the case to the trial court for a new trial." *Murphy*, 290 Ga. at 461 (2). See *Gardner*, 286 Ga. at 634; *Sauerwein*, 280 Ga. at 439 (2).

---

[2] It is true that "the mere overstatement by . . . investigators as to how much inculpatory evidence they presently possessed does not affect the *admissibility* of a defendant's statement." (Emphasis supplied.) *Wright v. State*, 279 Ga. App. 155, 157 (2) (630 SE2d 656) (2006). But irrespective of whether a defendant's statement is admissible as a threshold evidentiary matter, it is the role of the jury to ultimately determine what weight, if any, to afford such a statement, see *Dean*, 168 Ga. App. at 175-176 (3), and the context within which the statement was made would be relevant to the jury's determination of that issue.

3. Given our decision in Division 2, we need not address Haymer's allegations of other impermissible comments by the trial court.

*Judgment reversed. Miller, J., concurs. Ray, J., concurs in the judgment only.*