**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 19, 2023**

# In the Court of Appeals of Georgia

A23A0848. ROGERS v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Henry County entered a judgment of conviction against Brandon Rogers on four counts of child molestation (OCGA § 16-6-4 (a)) and one count of invasion of privacy (OCGA § 16-11-90) (2018). Rogers appeals from the denial of his motion for new trial as amended, arguing that the trial court erred by admitting certain evidence, by improperly commenting on the evidence, and by denying a motion for mistrial. Rogers also asserts that he received ineffective assistance of trial counsel in several respects. Finding no error, we affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence adduced at trial revealed that Rogers became the victim's brother-in-law when he married her sister, who is 13 years older than the victim. On occasion, the victim would visit her sister and her two children, and she would sometimes spend the night at Rogers' home. At trial, the victim described acts of molestation that occurred during two such visits when she was nine years old. During the first instance in January or February 2013, when the victim was nine years old, the victim and her niece were asleep in the niece's bed. The victim awakened to find Rogers between the two of them, rubbing her chest and buttocks.

During the second instance in April or May 2013, just before the victim's tenth birthday, Rogers and the victim were asleep on an air mattress in Rogers' living room. The victim awakened with her shirt pushed up and her pants and underwear down, and Rogers was rubbing her breasts while his penis rubbed against her buttocks and

---

[1] See *Prescott v. State*, 357 Ga. App. 375, 381 (2) (850 SE2d 812) (2020). Although Rogers does not contest the sufficiency of the evidence, our rules require that he still provide "[a] statement of the case that sets out the material facts relevant to the appeal . . . [and] describes the relevant proceedings below. . . ." Court of Appeals Rule 25 (a) (5); see also Rule 25 (b). Despite these requirements, the facts presented by the parties are sparse.

vagina. Rogers then grabbed the victim's hand and placed it on his penis.[2] Approximately one year later, the victim disclosed Rogers' abuse to her mother and her sister, who met the victim's outcry with disbelief. The victim's sister also threatened to "take [the victim's] niece and nephew away and [the victim] would never see them . . . again." The victim's mother did not contact police because she was "overwhelmed" that the situation involved two of her children, and she urged Rogers to "get help." Thereafter, the victim did not go to Rogers' residence by herself for a few years.

In the third incident, which occurred days after the victim's fifteenth birthday, the victim spent the night at Rogers' home. The next day, the victim cared for her niece and nephew while Rogers and her sister went to work. That afternoon, after Rogers returned home, the victim asked if she could take a shower. Rogers agreed, but indicated he needed to use the restroom first. Rogers emerged several minutes later, and the victim entered the restroom. She turned on the shower, undressed, showered, and began re-dressing. As she was looking for a hair brush, the victim

---

[2] Three months later, in what the victim's mother characterized as a hurried wedding, Rogers married the victim's sister ("[Rogers] was rushing to get a marriage like instantly. Like he wanted to marry her right away."). The victim's sister did not testify at trial.

noticed a cell phone in the corner of the bathroom. When she picked it up, she noticed that it was recording; upon inspection, the victim found a video depicting her nude body as she undressed and re-dressed. She immediately grabbed her phone and took two photographs of images on Rogers' phone. When the victim exited the bathroom and angrily confronted Rogers, Rogers said, "I'm so sorry. Delete it. Delete it. It must've done it on its own." The victim reported the recording to her sister (who, again, did not believe her accusation against Rogers) and called her father to come and pick her up. The victim reported the recording to her father and her mother, but they did not initially contact police and instead asked Rogers to "get help." Four days later, however, the victim and her parents went to the police.

A Henry County grand jury indicted Rogers for four counts of child molestation and one count of invasion of privacy, and a trial jury returned a verdict of guilty as to each count. The trial court denied Rogers' motion for new trial as amended, and this appeal follows.[3]

---

[3] We dismissed an earlier appeal filed by Rogers for lack of jurisdiction. See *Rogers v. State*, No. A22A1300 (docketed April 12, 2022). However, the trial court vacated its prior order and re-entered judgment against Rogers, from which Rogers timely appealed. See *Pierce v. State*, 289 Ga. 893, 894-895 (2) (717 SE2d 202) (2011). Accordingly, we have jurisdiction to consider Rogers' current appeal.

1. First, Rogers contends that the trial court erred in introducing, over a valid objection, the victim's photographs of Rogers' cell phone without a proper foundation. We find no abuse of discretion.

During trial, a detective testified that the victim's cell phone was taken as part of the investigation. In his review of the contents of the phone, the investigator noticed the two images in which the victim "used the camera on her phone to take a picture of another phone." The State tendered the two photographs[4] into evidence and Rogers objected, arguing that the detective was not the proper witness to authenticate the photographs because he could not testify whether they fairly and accurately depicted Rogers' cell phone. After the State responded that the victim's phone had been taken into evidence and that the photographs were then obtained, the trial court admitted the photographs over Rogers' objection.

Under our Evidence Code, "authentication of evidence may be achieved through any of a variety of means so long as there is evidence sufficient to support

---

[4] The photographs were, in actuality, "screen shots" from a video recording on Rogers' phone. However, the detective testified that, after obtaining a search warrant for Rogers' phone and downloading its contents, he was not able to locate the recording.

a finding that the matter in question is what its proponent claims."[5] (Citation and punctuation omitted.) *Holley v. State*, 363 Ga. App. 107, 110 (2) (871 SE2d 13) (2022). To that end,

> [d]ocuments from electronic sources are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence, which may include the appearance, contents, substance, internal patterns, or other distinctive characteristics of the documents, taken in conjunction with circumstances.

(Citations and punctuation omitted.) *Intemann v. State*, 358 Ga. App. 488, 494 (1) (855 SE2d 666) (2021); see also *Pierce v. State*, 302 Ga. 389, 395 (2) (a) (807 SE2d 425) (2017) (affirming trial court's admission of photographs of text messages from defendant's phone taken by officer); *In the Interest of L. P.*, 324 Ga. App. 78, 81-82 (2) (749 SE2d 389) (2013) (same). In addition, "[a]uthentication may be achieved

---

[5] Although Rogers objected to the State's failure to authenticate the photographs, his argument on appeal claims that the State failed to lay a proper foundation for the evidence. In this context, our courts have construed these objections to be the same. See *Hillman v. ALDI, Inc.*, 349 Ga. App. 432, 442 (2) (825 SE2d 870) (2019) (noting that courts may use phrase "laying a foundation" "to refer to a party's need to show that the evidence in question is relevant and/or necessary" or "to refer to the proof required as to 'the authenticity or genuineness of a writing'") (citations and punctuation omitted).

6

through 'testimony of a witness with knowledge that a matter is what it is claimed to be.' OCGA § 24-9-901 (b) (1)." (Punctuation omitted.) *Holley*, 363 Ga. App. at 110 (2). "Once the party seeking to authenticate evidence presents a prima facie case that the evidence is what it purports to be, the evidence is properly admitted, leaving the ultimate question of authenticity to be decided by the jury." (Citation and punctuation omitted.) Id. We review the admission of evidence for a clear abuse of discretion. Id.

In this case, we find no such abuse because circumstantial evidence supported the admission of the photographs into evidence. In particular, a police officer testified that the victim provided a statement in which she described taking photographs of Rogers' phone and that Rogers' phone contained recordings depicting the victim's nude body. The officer also took the victim's phone into evidence. Thereafter, a detective reviewed the victim's phone and found the images of Rogers' phone that the victim had taken, and the detective identified the images at trial. Under these circumstances, we find no abuse of the trial court's discretion in admitting the photographs into evidence. See *Pierce*, 302 Ga. at 395 (2) (a); *Intemann*, 358 Ga. App. at 494-496 (1).[6]

---

[6] Even if we were to accept Rogers' argument that the State failed to lay a proper foundation for the evidence with the detective, the victim subsequently testified that she took the photographs of Rogers' phone and acknowledged the

2. Rogers also argues that the trial court erred when it "failed to grant" his motion for mistrial after the State failed to turn over the recording of Rogers' interview with law enforcement. However, because Rogers withdrew the mistrial motion and ultimately agreed with the trial court's proposed solution, this enumeration presents nothing for our review.

During Rogers' cross-examination of a detective, Rogers' counsel learned that a recording of the detective's interview of Rogers existed. Rogers' counsel stated, "I've got a problem[,]" and the trial court excused the jury. When Rogers stated that the recording had never been made available, the State responded that it had an open file policy and that Rogers' counsel could have "come any time to look at our evidence. . . ." Once the trial court confirmed that a recording of the interview existed and that there was a dispute as to whether it had been made available to Rogers, the trial court offered to take a recess to allow Rogers' counsel to review the "13, 14

_____

content of what was depicted on Rogers' phone. Moreover, the photographs also appeared in a series of text messages between the victim and her sister, which the trial court admitted into evidence as State's Exhibit 21 without objection. See *Ga. Power Co. v. Faulk*, 102 Ga. App. 141, 145 (3) (115 SE2d 733) (1960) ("When testimony is improperly admitted at the stage of the trial when it goes to the jury, subsequent proof, which renders its admission proper, cures any error in its prior admission."), citing *Wall v. State*, 153 Ga. 309, 319 (112 SE 142) (1922).

8

minute[]" recording.[7] Instead, Rogers' counsel moved for a mistrial. The trial court reserved ruling on Rogers' motion until counsel had the opportunity to view the recording, and Rogers' counsel agreed.

After an extended lunch recess, Rogers' counsel confirmed that he had viewed the recording which, in actuality, was "43 minutes long[,]" and had discussed the recording with Rogers. He then candidly stated, "I don't think it rises to the level of something that warrants a mistrial." What followed was a lengthy discussion between the trial court, Rogers' counsel, and the State concerning the possible use of the recording, at the conclusion of which all parties agreed that the recording would not be played and the trial court would simply tell jurors that "we have been able to get to the bottom of the misunderstanding and there's no need for me to rule on anything and both sides are ready to move on."

With Rogers having both withdrawn his motion for mistrial following an opportunity to review his recorded interview and agreeing with the trial court's proposed resolution of the matter, this enumeration presents nothing for review. See *Hicks v. State*, 262 Ga. 756, 757 (2) (425 SE2d 877) (1993); *Evans v. State*, 360 Ga.

---

[7] For its part, the State acknowledged that it was "not going to play [the recording]" because the interview was "very self-serving" and, in fact, the recording was not played during the trial.

9

App. 596, 605 (7) (859 SE2d 593) (2021); see generally *Ingram v. State*, 290 Ga. 500, 503-504 (2) (722 SE2d 714) (2012) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing.") (citation and punctuation omitted).

3. Next, Rogers asserts that the trial court committed reversible error when it made a comment, during the victim's testimony, referring to "the incident[,]" in violation of OCGA § 17-8-57 (a) (1). We find no plain error.

During the victim's testimony, she recounted two instances of child molestation that occurred when she was nine years old. The State then tendered a photograph of the victim, taken when she was "[e]ither nine or ten." Rogers objected to the photograph as irrelevant, but the trial court ruled that "[i]t's relevant to the time the incident happened[,] what she appeared like at the time." Rogers did not object to the trial court's statement.

"It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57 (a) (1). However, the "failure to make a timely objection to an alleged violation of [OCGA § 17-8-57 (a) (1)] shall preclude appellate review, unless such violation constitutes plain error

10

which affects substantive rights of the parties." OCGA § 17-8-57 (b). To establish plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, *if* the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis supplied.) *White v. State*, 305 Ga. 111, 119-120 (3) (823 SE2d 794) (2019); see also *Dukes v. State*, 364 Ga. App. 425, 427 (875 SE2d 409) (2022). "If one prong of the plain error test is not satisfied, we need not address the remaining prongs." *Dukes*, 364 Ga. App. at 427.

Pretermitting the remaining prongs of the plain error analysis, we conclude that Rogers cannot demonstrate the third prong: that the error "affected the outcome of the trial court proceedings." *Bernal v. State*, 358 Ga. App. 681, 691 (2) (c) (ii) (856 SE2d

11

64) (2021).[8] At the outset, the trial court's use of the word "incident" does not "automatically amount to an improper expression of [Rogers'] guilt . . . under OCGA § 17-8-57, as that statute is violated only when the court intimates to the jury what the judge believes the evidence to be[.]" (Citation and punctuation omitted.) *Morris v. State*, 280 Ga. 184, 186 (2) (c) (625 SE2d 391) (2006) (concluding that trial court's reference to a "victim" did not violate OCGA § 17-8-57). Even if we viewed the trial court's statement as improper, however, the statement was, at most, a single passing reference in a five-day trial. See, e.g., *DeLoach v. State*, 308 Ga. 283, 295 (840 SE2d 396) (2020) (Nahmias, J., concurring) (noting that six justices disagreed with precedent "holding that a trial court's passing reference to the appellate process in a criminal case is an expression of opinion as to the defendant's guilt that requires

---

[8] The cases upon which Rogers relies were decided before OCGA § 17-8-57 was amended in 2015 to include the plain error analysis. See *Murphy v. State*, 290 Ga. 459, 461 (2) (722 SE2d 51) (2012) ("It is of no consequence that counsel failed to contemporaneously object. A violation of OCGA § 17-8-57 is always 'plain error' and failure to object will not preclude appellate review."); *Haymer v. State*, 323 Ga. App. 874, 878-879 (2) (747 SE2d 512) (2013) (physical precedent only); see also *Thompson v. State*, 304 Ga. 146, 155-156 (11) (816 SE2d 646) (2018) (noting that OCGA § 17-8-57 "was amended in 2015 to make certain violations of that statute subject to regular plain error review" and that, because "[t]he amended version of OCGA § 17-8-57 was in effect at the time of Appellant's trial in 2016, . . . we review [the defendant's] claim that the trial court improperly expressed its opinion . . . only for plain error") (citation and footnotes omitted).

reversal under OCGA § 17-8-57"); *Moon v. State*, 258 Ga. 748, 756 (15) (375 SE2d 442) (1988). Moreover, "[s]ustaining or overruling an objection is not a violation of OCGA § 17-8-57." *Mathis v. State*, 276 Ga. App. 205, 207 (622 SE2d 857) (2005); *Leggon v. State*, 249 Ga. App. 467, 473 (6) (549 SE2d 137) (2001) (citing principle that "the statutory inhibition . . . against an expression or intimation of opinion by the trial court as to the facts of the case does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence" to hold that "the trial court's simple statement sustaining an objection [does not] in any way implicate[] OCGA § 17-8-57"). Finally, the trial court issued a curative instruction during its jury charge, stating

> [b]y no ruling or comment that the Court has made during the progress of this trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant.

See *Bates v. State*, 306 Ga. App. 418, 419-420 (2) (702 SE2d 460) (2010) (considering same curative jury instruction in holding that trial court's comment to defendant that "the jury is not idiots" and limiting cross-examination did not violate OCGA § 17-8-57 (a)). Under these circumstances, we find no plain error.

13

4. Finally, Rogers contends that he received ineffective assistance of trial counsel due to counsel's failure to: (a) request a continuance to view Rogers' interview and in failing to ask the trial court for a ruling on his motion for mistrial; (b) object to the trial court's statement concerning "the incident" and request a limiting instruction; and (c) move for exclusion of State's Exhibit 13 consisting, in part, of incoming text messages to Rogers from others, including his wife. For the following reasons, we conclude that Rogers has failed to demonstrate ineffective assistance of counsel.

To show ineffective assistance of trial counsel, Rogers "has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different." (Citations and punctuation omitted.) *Prescott v. State*, 357 Ga. App. 375, 385 (3) (850 SE2d 812) (2020). "This burden, although not impossible to carry, is a heavy one, because when reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." (Citations and punctuation omitted.) Id. Importantly, "[t]he standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel

14

rendering reasonably effective assistance." (Citation omitted.) *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012). "If a defendant fails to satisfy either prong of the test for ineffective assistance of counsel, it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) *Prescott*, 357 Ga. App. at 385 (3).

(a) *Continuance and Motion for Mistrial*. Rogers asserts that he received ineffective assistance of trial counsel due to counsel's failure to ask for a continuance or move for a mistrial following the State's disclosure of a recording of Rogers' interview with police. We conclude that Rogers has failed to demonstrate prejudice as required by the ineffective assistance analysis.

We recounted the circumstances surrounding the State's disclosure of the recorded interview during trial, and Rogers' counsel's response to it, in Division 2. During Rogers' motion for new trial hearing, trial counsel testified and characterized the recording as "[t]he most significant thing that came up at trial." He also stated that, had he had the recording prior to trial, "we certainly would've approached the case differently." He concluded that he did not know why he did not "insist on [a] ruling on [his] motion for mistrial" and offered that "in retrospect that was wrong. . . ." Nevertheless, trial counsel acknowledged that, after reviewing the video during

15

an extended lunch recess, he did not think the video included any exculpatory information.

It is true that decisions of whether to move for a mistrial "generally fall within the ambit of strategy and tactics." *Wilson v. State*, 306 Ga. App. 827, 831 (2) (a) (703 SE2d 400) (2010). As such, and "[p]articularly in regard to matters of trial strategy and tactic, effectiveness is not judged by *hindsight* or *result*." (Citation omitted; emphasis supplied.) *Davis*, 290 Ga. at 587 (2) (b). Here, Rogers' trial counsel recalled that he was "flustered and . . . angry and . . . probably wasn't at [his] best[,]" following the State's revelation of the recording, when he did not press his initial request for a mistrial. However, Rogers has failed to detail in what manner his trial counsel would have prepared differently had the recording been disclosed, much less provide any showing that the outcome of Rogers' trial would have been different but for the failure to move for a continuance or a mistrial. Therefore, "[p]utting aside whether counsel performed deficiently in not moving for a mistrial," Rogers has not demonstrated prejudice and, as a result, his claim of ineffective assistance on this basis fails. *Lupoe v. State*, 300 Ga. 233, 249 (15) (794 SE2d 67) (2016).

(b) *Objection to Trial Court's Statement*. In Division 3, we found no plain error in the trial court's statement that a photograph of the victim was "relevant to the time

16

the incident happened[,] what she appeared like at the time." See generally OCGA § 17-8-57 (a). Specifically, we concluded that Rogers failed to demonstrate that the court's statement affected the outcome of the proceedings. "The prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim." *Bozzie v. State*, 302 Ga. 704, 711 (4) (b) (808 SE2d 671) (2017). Absent any showing of prejudice, then, it follows that Rogers cannot demonstrate ineffective assistance of trial counsel on this ground.

(c) *Motion to Exclude Incoming Text Messages*. Finally, Rogers contends he received ineffective assistance of counsel due to counsel's failure to object to State's Exhibit 13, which included several incoming text messages on Rogers' phone.

During trial, the State tendered an extraction report, detailing the contents of Rogers' cell phone. The report, which contained both incoming and outgoing text messages, included two messages Rogers received from the victim's sister and which he now highlights: "well your also not going to leave me! That will prove to them that you did it" and "And if MoM chooses to be with someone who verbal abuses her and I chose to stay with you because you recorded my sister, as they say than I will!" The trial court admitted the report without objection. At the hearing on Rogers' motion

17

for new trial, his trial counsel testified that he did not have "any strategic reason to allow in this inadmissible hearsay."

Georgia law provides that "[a]dmissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is the party's own statement." (Citation, punctuation, and emphasis omitted.) *Glispie v. State*, 300 Ga. 128, 131 (1) (793 SE2d 381) (2016); see also OCGA § 24-8-801 (d) (2) (A). Because outgoing text messages are considered a party's "own statement," the same are generally admissible as admissions by a party opponent. See *Glispie*, 300 Ga. at 131 (1); see also *Johnson v. State*, 347 Ga. App. 831, 842 (2) (b) (i) (821 SE2d 76) (2018). Similarly, some incoming text messages "may be admissible to provide context to outgoing text messages that are admissible as admissions." *Johnson*, 347 Ga. App. at 843 (2) (b) (ii). However, "an incoming text message is admissible as context [only] to the extent it is non-hearsay offered to prove its effect on the person receiving the message." Id.

Notably, the first of the two examples Rogers challenges came in response to *outgoing* texts from Rogers, stating "I'm serious thinking about moving to Panama city I could save and send you money and you could move up there to[,]" "Well I not going to live here and be threatened[,]" and "You guys are my world my life[.]"

18

Similarly, the second example ultimately came in response to Rogers' *outgoing* text, "Here I am being blessed by god and all a sudden this bull s— happen[,]" to which the victim's sister responded:

Exactly ! I don't know what the f— to do ! I'm stuck in the

middle again ! I can't deal brandon ![;]

ily but I'm so stuck , Do ya hear me ! I have so many mixed

emotions ! If I stay with you my family hates me If I leave you ,

I'm unhappy . What do I doooooooooooo[;]

I love you so much that this extremely hurts[; and]

I'm so lost for words ! I don't even know what to do !     **7     4
(duplicate at 67)**

Thereafter, when Rogers texted "ily," the incoming responsive texts included:

I love you so much baby ![;]

My family is just going to have to hate me ! I'm choosing you and

if it's the wrong decision then I guess we will find out in heaven

but you know what one sin is not bigger than another[; and]

And if MoM chooses to be with someone who verbal abuses her

and I chose to stay with you because you recorded my sister , as

they say then I will !

20

See *Johnson*, 347 Ga. App. at 843 (2) (b) (ii) (discussing admissibility of incoming text messages to show context to outgoing text messages).

Even assuming that the incoming text messages were inadmissible hearsay, and that trial counsel was deficient in failing to object to State's Exhibit 13, we again conclude that Rogers cannot demonstrate prejudice. See *Westbrook v. State*, 308 Ga. 92, 98 (3) (b) (839 SE2d 620) (2020) (holding that defendant failed to demonstrate prejudice resulting from trial counsel's failure to object, on hearsay grounds, to incoming text message because evidence was cumulative of other properly admitted evidence). The substance of the two text messages Rogers highlights (out of multiple pages of both incoming and outgoing text messages) — specifically, the victim's sister's defense of Rogers and a statement that Rogers recorded the victim — was cumulative of other evidence, including a series of texts between the victim and her sister in which the victim's sister again defended Rogers and suggested that Rogers' phone spontaneously recorded the victim. See id. In addition, the victim herself offered testimony concerning the discovery of Rogers' surreptitious recording, her confrontation with Rogers after her discovery, and Rogers' plea that the victim delete the recording because "it must've done it on its own." In view of this properly

21

admitted evidence, we conclude that Rogers has again failed to demonstrate prejudice, and this claim of ineffective assistance of counsel necessarily fails.

In sum, we affirm the trial court's judgment denying Rogers' motion for new trial as amended.

*Judgment affirmed. Mercier, C. J., and Miller, P. J., concur.*